**Arian FULLER, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A04–0511–CR–648.**

Court of Appeals of Indiana.

Aug. 9, 2006.

Transfer Denied Oct. 26, 2006.

Marshelle Dawkins Broadwell, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Matthew D. Fisher, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

◼ Appellant–Defendant Arian Fuller ("Fuller") appeals his convictions and fifty-five year aggregate sentence for Murder, a felony,[1] Intimidation, a Class D felony,[2] and Carrying a Handgun Without a License, a Class A misdemeanor.[3] We affirm those convictions, and remand with instructions to the trial court to vacate the conviction for Attempted Robbery.[4]

---

**1.** Ind.Code § 35–42–1–1.

**2.** Ind.Code § 35–45–2–1.

**3.** Ind.Code § 35–47–2–1.

**4.** Because of double jeopardy concerns, the trial court did not sentence Fuller for At-

### Issues

Fuller presents four issues for review, which we consolidate and restate as two:

I. Whether Fuller was denied his right to an impartial jury because of the procedures and instruction employed by the trial court; and

II. Whether the fifty-five year advisory sentence is inappropriate.

### Facts and Procedural History

In May of 2005, Mustafa Nur ("Nur") was living with relatives Ali Jama ("Jama") and Ban Ali ("Ali") in an Indianapolis apartment. Nur became acquainted with some young men in the neighborhood, including Fuller, James Ivy ("Ivy"), and D.J. Fancher ("Fancher"). Nur told the group of young men that they should rob one of his relatives because he had money. The trio agreed to carry out the robbery, and to split the money with Nur.

On May 12, 2005, Jama evicted Nur from the apartment and drove to Columbus, Ohio to get Abdulahi Nur ("Abdulahi"). Meanwhile, Ivy and Fancher broke into Jama's apartment, but found no money. Ivy and Fuller returned a second time to the apartment, expecting to find a green suitcase, but again left empty-handed. At that point, Fuller declared, "I'm gonna get this nigga." (Tr. 97.)

As Jama drove back to Indianapolis, Nur called and asked to meet Jama at the apartment in order to retrieve some of his belongings. Jama agreed to meet Nur. However, when Jama and Abdulahi entered the apartment, Nur was not there.

tempted Robbery. However, a double jeopardy violation occurs when judgments of conviction are entered and cannot be remedied by the "practical effect" of concurrent sentences or by merger after conviction has been entered. *See Jones v. State,* 807 N.E.2d 58, 67–68 (Ind.Ct.App.2004), *trans. denied.*

Abdulahi was removing his shoes when Fuller burst out of the bathroom, wearing a mask and brandishing a gun. Fuller demanded to know, "where is the rest of the money?" (Tr. 25.) Jama slipped into the kitchen and dialed 9–1–1. Abdulahi attempted to wrestle the gun from Fuller. Fuller shot Abdulahi twice, killing him.

On May 18, 2005, the State charged Fuller with Murder, Attempted Robbery, Intimidation and Carrying a Handgun Without a License. Marion County Sheriff's Deputy Cullin Deferbrache ("Deputy Deferbrache") was assigned to transport Fuller to his initial hearing. Deputy Deferbrache overheard Fuller laughing and describing to another inmate the circumstances of Abdulahi's death. Abdulahi was "on his knees" and "the mother———— was begging for his life." (Tr. 349.) Abdulahi then "started talking that African shit. I told him don't bring that African shit with me." (Tr. 349.)

Fuller was brought to trial on September 12, 2005. In accordance with Indiana Jury Rule 20, the jurors were instructed that they could discuss the evidence with fellow jurors "in the jury room during recesses from trial when all are present as long as you reserve judgment about the outcome of the case until the deliberations begin." (App.73.) After the conclusion of the trial on September 14, 2005, the jury found Fuller guilty as charged. The trial court sentenced Fuller to fifty-five years for Murder, four years for Intimidation, and one year for Carrying a Handgun Without a License, to be served concurrently, providing for an aggregate sentence of fifty-five years. Fuller now appeals.

### Discussion and Decision

#### I. *Right to Impartial Jury*

At the commencement of Fuller's trial, the trial court provided the parties with the opportunity to object to the proposed preliminary instructions, which included Preliminary Instruction 2. Preliminary Instruction 2 incorporates the language of Indiana Jury Rule 20(a)(8), and provides as follows:

During the trial, there will be periods of time when you will be allowed to separate such as recesses, rest periods, lunch periods and overnight. When you are outside of the jury room, you must not discuss the case among yourselves or with anyone else. However, you may discuss the evidence with your fellow jurors in the jury room during recesses from trial when all are present as long as you reserve judgment about the outcome of the case until the deliberations begin.

From now until the trial is concluded, do not talk to any of the parties, their lawyers, or any of the witnesses.

If anyone makes any attempt to talk to you concerning this case, you should report the fact to the court immediately.

If there is information or discussion about this trial in newspapers, on radio, on television, on the internet, or among other people, you should not read, watch, or listen to these accounts. You must focus your attention to the court proceedings and reach a verdict solely upon the evidence and the law presented in this court.

(App.73.) Fuller objected to the instruction and the procedure promulgated thereby on three grounds: (1) allowing discussion before all the evidence is presented "impinges upon the federal constitutional right to be presumed innocent;" (2) discussion might occur with less than all jurors or with the alternates present, a "due process violation;" and (3) allowing jurors to ask questions "impinges upon due process" and "makes a separation of powers argument." (Tr. 7–8.) He did not tender an

alternative instruction. Over Fuller's objections, the trial court gave Preliminary Instruction 2.

On appeal, Fuller has raised several different challenges to Preliminary Instruction 2 and the procedures promulgated thereby: (1) the jurors should have been sequestered, because they were effectively "deliberating" if they were "discussing the case;" (2) allowing discussion before "official deliberations" destroys impartiality and thus violates "due process;" and (3) the instruction was misleading and confusing about when discussion could take place. Appellant's Br. at 8–15.

■ It is well-settled law in Indiana that a defendant may not argue one ground for objection at trial and then raise new grounds on appeal. *Gill v. State,* 730 N.E.2d 709, 711 (Ind.2000). However, waiver notwithstanding, Fuller has not demonstrated that he was denied an impartial jury and thus deprived of due process.[5] Although he correctly observes that Indiana Code Section 35–37–2–6(a) contemplates sequestration during deliberations, he fails to acknowledge that the statutory requirement for sequestration is invoked when the jury is charged.[6] He does not claim that the jury in his case failed to comply with the sequestration requirement after they were charged. Nor does he claim that he requested sequestration during the entirety of the trial.

Too, Fuller claims that he was denied due process because "a jury trial in which jurors have been allowed to discuss the case prior to official deliberations cannot be impartial." Appellant's Br. at 12. He presents a logic-based argument that the first information to be heard and discussed has a "primacy" effect. He does not, however, provide any citation to relevant legal authority supporting his position that court-sanctioned internal jury discussion in the jury room during recesses constitutes a denial of due process.

Finally, Fuller complains that the jury could have been confused and misled, because they were alternately told, "they may discuss the evidence" and "do not talk about this case among yourselves." Appellant's Br. at 15. Preliminary Instruction 2 specifies that venue determines when discussion may and may not take place among jurors: *"When you are outside the jury room,* you must not discuss the case among yourselves or with anyone else. However, you may discuss the evidence with your fellow jurors *in the jury room* during recesses from trial when all are present[.]"* (App.73.) (emphasis added.)

Fuller has not shown that the jurors were unable to render a fair and impartial verdict because of procedures or instruction employed by the trial court.

## II. *Appropriateness of Sentence*

■ Fuller received the fifty-five year advisory sentence for Murder, Indiana Code Section 35–50–2–3, but argues that it

---

5. The right to an impartial jury is guaranteed by Article I, Section 13 of the Indiana Constitution, and is an essential element of due process. *Black v. State,* 829 N.E.2d 607, 610 (Ind.Ct.App.2005), *trans. denied.*

6. Indiana Code Section 35–37–2–6(a) provides:

(a) After hearing the charge, the jury shall retire to the jury room for deliberation.

They shall retire under the charge of an officer, who shall be sworn by the court to:
(1) keep the jury together in the jury room or other place ordered by the court;
(2) furnish them food as directed by the court; and
(3) not permit any person to speak or communicate with them.

is inappropriate "given his youth." [7] Appellant's Br. at 15. Pursuant to Indiana Appellate Rule 7(B), he seeks revision of his sentence to the statutory minimum of forty-five years. Indiana Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender."

In general, sentencing determinations are within the trial court's discretion. *Cotto v. State*, 829 N.E.2d 520, 523 (Ind. 2005). Indiana Code Section 35–38–1–7.1(b) provides that the court may consider mitigating circumstances. However, "[a] court may impose any sentence that is authorized by statute and permissible under the Constitution of the State of Indiana, regardless of the presence or absence of aggravating circumstances or mitigating circumstances." Ind.Code § 35–38–1–7.1(d).

Accordingly, a sentencing court is under no obligation to find, consider, or weigh either aggravating or mitigating circumstances. Rather, the court may impose any sentence within the sentencing range without regard to the presence or absence of such circumstances. "Because the new sentencing statute provides a range with an advisory sentence rather than a fixed or presumptive sentence, a lawful sentence would be one that falls within the sentencing range for the particular offense." *Samaniego–Hernandez v. State*, 839 N.E.2d 798, 805 (Ind.Ct.App. 2005). The sentence imposed upon Fuller was within the sentencing range applicable to Murder. Furthermore, our Supreme Court has held that young age is neither a statutory nor a per se mitigating factor. *Sensback v. State*, 720 N.E.2d 1160, 1164 (Ind.1999). As such, the trial court was not required to impose a minimum sentence upon Fuller because of his youth.

Moreover, we do not perceive that the nature of the offense and the character of the offender suggest a minimum sentence. The nature of the offense is that Fuller insisted that he could complete a robbery twice attempted in vain, claiming he would "get this nigga." (Tr. 97.) He lay in wait, masked and armed, after Jama had been lured back to the apartment under false pretenses. He shot the victim twice, while Jama attempted to summon help. The character of the offender is such that he laughed and boasted to another prisoner about murdering Abdulahi as he begged for his life. As such, we need not revise the advisory sentence for inappropriateness.

### Conclusion

Fuller has not demonstrated that he was denied an impartial jury. Nor has he established that his fifty-five year aggregate sentence is inappropriate. The convictions and sentence for Murder, Intimidation and Carrying a Handgun Without a License are affirmed. We direct the trial court to vacate the conviction for Attempted Robbery.

Affirmed in part; remanded with instructions.

KIRSCH, C.J., and CRONE, J., concur.

---

**7.** Fuller was seventeen when he committed the instant crimes.